yet again. So we have the Johnson matter. Mr. Jupiter. May it please the court and good morning. My name is Omodara Jupiter. I represent the appellant, Mr. Vaughn Johnson. I would like to reserve four minutes for rebuttal. Yes, sir. Go ahead. Your Honor, I want to begin by saying in order for there to be revocation of supervised release, there has to be supervised release. Mr. Vaughn Johnson was not supervised by the court on supervised, was not supervised by the District of the Virgin Islands, not directly or not through its court. But under your, from that perspective, as you argued that in your brief, that would mean an offender who had committed different offenses in different judicial districts, and district court judges imposed supervised release on, for the offenses in front of them, that if only unless we're going to make it a very extreme distance, California and New Jersey. Yes, Your Honor. And the New Jersey office still has an active supervised release order, but the offender lives in California. Your view would be that the New Jersey supervised release obligations disappear because it is not actively supervising, and it couldn't because it's 3,000 miles away. So isn't your argument really hurt an offender who has the benefit of the concurrency term? No, Your Honor. My argument doesn't, I don't think, goes as far as the court would see it. And I think even in the record, even in the district court, I made clear that certainly you can indirectly supervise someone. You can indirectly supervise them through another office, but you can't do nothing is what I'm, is I think what maybe an oversimplification of the requirements that are imposed by 3624E. But you're saying then the probation officers, because it's the 3424, 3624, 3624E talks about supervision to the extent warranted, something along those lines. Yes, yes. So, and that decision is made by the probation officer. So you're saying that if a probation officer has determined the Middle District of Florida is doing a fine enough job to supervise the offender, that decision means the district judge loses the authority over his or her judgment? No, Your Honor. I think that if they, for them to make, there has to be some determined, they have to do, they have to make that determination. And so there has to be something that is done. I certainly don't think that is done if they are not even aware that the person has been released. So I think the record is pretty clear that this probation office not only was not aware, but when, and a little bit of evidence that says that Mr. Johnson actually called them, and even then not even taking any steps to send paperwork, get paperwork, figure out, is this going to be a transfer of supervision? Is this going to be a transfer of jurisdiction? Wasn't there an effort to try to transfer and Middle District of Florida declined? After. After the violation occurred. And I think basically after they were basically forced to. I couldn't tell from the record why it is that your client was in the Western District of Kentucky, and why it is Florida was the place that he was directed to eventually report to. Can you elaborate on any of that? Well, it's not in the record, and I think that's somewhat telling as well in terms of what my, with my, it gives some legs to my argument as well. Tell me how that helps you. But I think that he made a request to be released to the district, to there. To Kentucky. I believe that that's what had happened. He was released by Bureau of Prisons to the District of Kentucky. So he wasn't housed in Kentucky. His custodial status wasn't in Kentucky. I'm not sure if his custodial, it may have been. Because you know how you have to. But I think the reason from our perspective was that's where he wanted to go. And so I think there's an interplay, and the statute even contemplates that interplay of someone being released somewhere. Go ahead. Was there a specific point when Judge Lewis lost the ability to adjudicate her own violation of probation? You know, I don't think that we can say, that I can say that, John, that there's a specific point. I think that it's, you know, because certainly there's no case law. There's no, there's nothing that says, okay, you have this many days to do it. I mean, but don't you, maybe that begs this question, don't you in a sense retain, always retain the power to adjudicate your own violations of probation? Well, you know, I think, no, I don't think you do. And this is, right. That's what I'm asking, is there a point where you lose it? Yeah, so, you know, so the court is basically wants, obviously we want to have clear guidelines here, and it would be great if I could come and say, you know, they have 30 days to make some type of effort to send some paperwork to give some notification to the defendant, to the probationer. But I have to admit, that does not exist. What I think is occurring here, what really changes the scenario here, is when someone has been released for a good bit of time and the probation office does absolutely nothing to supervise them. Yeah, I agree with you. I think this is shameful and it certainly could have been handled a lot better. But I still wonder whether all of that, given all of that, Judge Lewis still could not adjudicate a violation of probation. Yeah, and the reason I say, the reason, while I can't say that there is a specific point, I think after the offense occurs it's certain you can't, I think you've lost your ability at that point. Because you've abdicated, you've essentially, you know, abdicated your ability to take the power over that supervision. And you're saying it's because of a lack of active supervision? Is that why? I think it's because, you know, the term active supervision, I don't want to mislead the court in terms of like there has to be some, maybe they didn't necessarily need to be any active contact. With the direct, I should say direct contact with the probationer. But at least they had to have a relationship with the other probationers. Well, there are individuals who after their term of incarceration concludes are on supervised release but are deported. And there is no contact, but they're still on supervised release. The court has jurisdiction over their violations if they were to commit one. So doesn't that, those cases sort of undermine your position? Well, I don't know that any of those cases where that challenge has occurred. I'm not aware of a case where that. The key word may be jurisdiction that I just heard. Doesn't the sentencing judge retain jurisdiction to supervise its own probationary sentences and to determine whether there is a violation of probation? Isn't the sentencing judge the one who has the jurisdiction to do that? I think generally the sentencing, yes, the sentencing judge because it's still part of the sentence. So the sentencing judge would have jurisdiction. The question is, is there any meaning to the sentence in 3624 that says the probation office shall, not can or may, but it shall supervise during this period. And if there's no, if there's absolutely no scenario where they lose the power to supervise, lose the power to revoke, then that place is, that sentence has no effect. It has no statutory effect. What would be the alternate disposition? This person is before Judge Lewis. Judge Lewis sentenced the person, determined there was a violation of probation because of other conduct in other states. What would the judge do in that instance? Say, gee, I no longer have jurisdiction in this case? Or I lost jurisdiction somewhere along the way? Yeah. So I think that that's, the judge can, I think under these circumstances, the judge can say we really don't have the right, doesn't have to go as far as to say I don't, I lost jurisdiction. But the judge can say for this period of time that the court, through its arm of the probation office, did not assume its statutory role, that during that time we lose, we are not going to, we don't have the right to exercise our ability to revoke. But that's not based on any regulation or law or case law. That sounds like a discretionary decision on the part of the judge. If it's discretionary, then that means that that sentence, 3624E, has no statutory effect. So that means, let me see if I can formulate a hypothetical that works. So California and New Jersey, you could have one of two scenarios. Defendant leaves the country, doesn't tell anybody, right? Two separate places. Yes. No opportunity to supervise and have any permutation of that, you know, fugitive or he stays within the country and just doesn't report. Right. Right. One district, both of them lose the opportunity because of the shall, or how would that work in that particular instance? Or would this argument that you're posing just not apply? Yeah. I think in that situation, you could even say that both jurisdictions may have the ability to assume it because there is an act taken by the probation officer. An intervening act by the probation officer. Say it again. An intervening act by the person who's on supervising. Exactly. Yeah. So I think that changes the scenario. What about Gamarino? Gamarino. The Second Circuit and Fifth Circuit have dealt with similar instances. It's a Judge Cabrana's opinion. You, okay. You're giving me the, Judge, help me sing the tune a little bit. Those are the two, there are two cases. I think you acknowledged them in your brief. The supervised release terminates if one doesn't terminate the other. Yes. Okay. All right. So once again, I think it goes back to the distinction here. It goes back to when the probation office really, the difference here where the probation office takes no active role in the supervision. So are you abandoning the view that just because one term ends, the second term ends too? I'm not going to argue that, Your Honor. Very good. Okay. Thank you. Thank you. Good morning, Your Honors. Excuse me, David White for the United States. Your Honors, the United States submits that the district court properly concluded that it had jurisdiction over the supervised release term. With respect to the fact, if I understand Mr. Jupiter correctly, I think he was withdrawing or not pressing the argument that the termination in Florida also didn't terminate in the Virgin Islands. I would be happy to answer questions about that, but I think that that's correct. With respect to the questions that the panel was asking Mr. Jupiter regarding the absence of supervised release here, the government maintains that that still does not somehow relinquish or abate jurisdiction in the District of the Virgin Islands. Here, the district court retains jurisdiction to adjudicate supervised release, and that jurisdiction retains even after the period of supervised release has expired if the defendant somehow commits another offense and a petition or warrant is served during that time. So, jurisdiction does not abate from the district court here. So, the district court did properly conclude that. In that respect, Judge Greenway just adverted to the Fifth Circuit case in Alvarado and the Second Circuit case in Gamaro, and both the circuit courts concluded that, well, this goes back to the first issue of termination of one. Supervised release doesn't necessarily terminate the other. With respect to 36- Let me ask you this question. There's mandatory language that Mr. Jupiter has referred to, shall, right? Suppose the probation office just fails to follow that statutory mandate. It's a little different than this, but I think obviously it would have some applicability. What would be the remedy? Well, I think one, Your Honor, I think that the shell, I mean, I think it's important to keep in mind with the second clause of that, the probation shell supervised to the extent warranted and is directed by the sentencing court. And here, there's nothing the district court in the Virgin Islands didn't, there's nothing that shows that the district court specifically told the probation officer to engage in, you know, activities one, two, and three or conduct X, Y, and Z with respect to this supervised release C. So I think it's very important to remember the restrictive clause that follows the imperative term shell. So you're saying that in the absence of specific instructions from the district court, they would not have an obligation to do anything? No, Your Honor. I'm just saying that I think it's very important to always keep in mind that shell connects to a restrictive clause, that you do look at what the district court here said. But I think if all is going swimmingly as apparently it was until Mr. Johnson committed the second offense in Florida, I think the probation office, the standard terms of conditions of release generally, well, not generally, but they tell, they instruct the release C what he is to refrain from doing. I mean, they're couched in telling the release C, you know, do not possess a handgun, do not associate with felons, do not, you know, take drugs, do not violate federal, state, or local law. So it's a list of prohibitions that go to the release C. If the release C does indeed abide by those conditions, he complies with the terms of supervised release. I think that probation officers look at it and they say, okay, he's doing what he should have been done. I don't know that there is some type of need for an active supervision of this particular individual. So shell really has no meaning then? No, Your Honor. I wouldn't say that it doesn't have any meaning, but I... I'm so sorry. It doesn't create an obligation. It doesn't create an affirmative obligation. I think that that's actually correct, Your Honor. I don't think that that statute requires any type of active or affirmative conduct on behalf of a probation officer. Because there is a concept, as unusual as it sounds, sort of an unsupervised supervised release where the offender simply just has to comply with the standard conditions of release. That's very true, Your Honor. And I think that that is, you know, my experience is that that does happen and that is very common. As long as the offender is not doing anything, nothing has been brought to probation's attention, then you're left to, okay, you're on the straight and narrow now, keep treading on the straight and narrow, and your almost reward for being on the straight and narrow is, there's a little bit... It does seem to me, though, that the Virgin Islands Probation Department dropped the ball here. And I think, it seems to me, that they pretty much conceded. I, you know, he raises an argument that this is a jurisdictional issue, but he's really saying also that this is fundamentally unfair. I'm sorry, Your Honor. No, Mr. Johnson. I'm sorry, I didn't hear the last fundamentally unfair. I think he's basically arguing this is just fundamentally unfair. Look what happened to me. You know, it just, it should not have occurred. Well, Your Honor, again, I don't think that there's any, I don't think that 3624, and I don't know of any other statute or case that requires active supervision here. I would, to be brutally honest, agree. Things probably could have been handled a bit better. But I don't know that the probation offices in the District of the Virgin Islands not actively doing something results in any type of unfairness, particularly because the defendant was living in Florida at that time and was under the jurisdiction or was reporting to the Florida, the Middle District of Florida Probation Office. And the, you know, that Middle District of Florida actually did advise the Virgin Islands Probation Office that Mr. Johnson had reoffended. So I do think the fact that Florida was supervising him and apprised the Virgin Islands of any violation would tend to foreclose some type of unfairness argument here. I think it's also important to remember, Your Honor, that things could always probably be done better, but that doesn't mean what was done was necessarily bad or violated the law in some respect. So that's, I think that that's also a very important consideration given that there was no affirmative obligation on behalf of probation. In 3624E, other than as required by the sentencing court to supervise to the extent warranted, I think, is actual language. Does the statute say anything about how a revocation of one term of supervised release affects a concurrent term? Well, they do. It doesn't. I mean, the two terms run. If there are terms of supervised release, they do run concurrently. But that speaks to the running of the terms concurrently. That doesn't speak to the termination of terms. Termination is a very different matter from terms running concurrently. And I think that's what led the Second and the Fifth Circuits to state why that statute does provide for concurrent terms to be, indeed, run concurrently. That is not the same thing as termination. And I think that that is what the district court properly recognized here, is that the termination in Florida did not automatically terminate supervision somewhere else. And I think that that would lead, I think that would be very rife with pitfall, Your Honor, to permit district courts. Well, because district courts... One district says, hey, it's all good. Well, I think, to use examples that the court used, if the New Jersey probation officer said, okay, things are going well, I'm going to terminate you because this is what this judge, the Florida judge, did, giving you time served, I'm terminating. I mean, I don't see how a district court in New Jersey can also terminate a coordinate court in another jurisdiction and say, well, I terminated you too. I mean, where would that leave party, as district courts all over the country, could be terminating each other's supervised release? And then where would you appeal? There's no way that you would get to the point of determining that termination is appropriate without a unified way of looking at it, a uniform, I should say, way of looking at it. If that's happened, then why is that unfair and to whom? I'm sorry, Your Honor, I'm not sure I understand. Well, all I'm saying is you say that the possibility here is for disparate outcomes, and I'm asking you, how would that play out? Well, I do think that's why I think that these courts hold that termination of one supervised release doesn't necessarily terminate every other supervised release. One is there's nothing in the statute that provides for that, but I think as a practical matter that that would lead to the impracticalities I just stated. Isn't one of them the impracticalities, if the New Jersey court imposed five years of supervised release for a particular violation and California imposed a three-year term of supervised release violation, supervised release, and the California court said, I'm going to terminate you, its decision would then cut off two years from the New Jersey sentence, right? That's correct, Your Honor. Isn't that the practical problem? I think that that is a yes. That would be the practical problem. But the flip side would be fair, right? If it was the five years that was terminating and yet three years elsewhere, why would that be? Well, I don't think that that would be fair because then you'd have one court essentially amending or terminating the judgment of a coordinate court. I mean, I think that if district courts, if supervised release could be terminated, if one termination necessarily terminates all others, then I think that you would have, quite frankly, chaos because district courts all over the country could be terminating each other's supervised release because, like, well, mine ended, so therefore I'm going to terminate them as to every other district court. So you have coordinate courts essentially nullifying judgments of their coordinates. Thank you. Thank you, Your Honors.  Thank you, Judge. Thank you. Your Honor, with regard to the last point, I don't think that there is a danger, particularly in this situation, of one district court worrying about another district court cutting off its legs with regard to supervised release. These are all district courts. These are all U.S. district courts. And the fact that the district court that has the violation before it in a proceeding, and that district court in Mr. Johnson's case, the Middle District of Florida, determining that not only should his sentence run concurrent with the sentence that he gave, that that was given for the new offense, but also that his supervision should stop. And what we have under these specific facts is we have the arm of the court saying beforehand that they're going to leave everything up to the Middle District of Florida, not just leave it up to them, but not do anything to even find out anything about the particular offender. Well, actually, the District of Florida declined any request for supervision, didn't it? Well, you know, that was the testimony from the probation officer, was that he called the probation office over there and asked them, would you take jurisdiction? And they said no. I don't think that that's... And they said no. And they said no. I don't think there's nothing in the record that says that they actually went to the judge and said, Judge, we should take jurisdiction of this case. So for this particular subject, you've got to go to the judge for the transfer, but for the active supervision, the inactivity by a probation officer cuts the judge's jurisdiction off. I don't think, I think that in this, just in terms of the adequacy of the record, being clear that there was a, I guess, an affirmative denial by the district court, but I don't think that there's sufficient evidence just by this probation officer's testimony that I called somebody up and they said no. I don't think that that's a sufficient record to say that. So I don't, but I also don't think that there's a problem in terms of district courts being able to make determinations when, in situations like this, district courts making determinations on supervised release as to whether or not it should terminate for the entire period. Thank you, Your Honor. Thank you.